Good morning, your honors. May it please the court, Jonathan Libby appearing on behalf of the appellant Verdis Nevins. I would ask to reserve two minutes for rebuttal. Your honors, the district court committed a reversible error in this case when it refused to give two theory of the defense instructions that had been proposed by Mr. Nevins. Both proposed instructions were correct statements of the law and were supported by the evidence. And because the jury instructions given by the court did not adequately address the defense theory, a new trial should be ordered. The defense theory was that ownership is not possession and that while Mr. Nevins may have once owned a gun, he could not be convicted of constructive possession because he did not have fiscal access to or dominion and control over a gun that was found in a locked dresser drawer located in his parents' house, which he had not lived in for seven and a half months prior to the time alleged in the indictment. Now, there was a real possibility here that the jury could convict solely on the basis that Mr. Nevins had owned the gun, which is why the proposed instruction was that ownership alone without fiscal access to. How does the jury instruction that was given permit that? Well, the jury instruction that was given merely addresses possession in terms of knowledge of presence and physical control over power and intention to control. It makes no reference to ownership whatsoever. And the government certainly argued that ownership could be considered by the jury for making a finding that he, in fact, possessed the gun, that ownership was, in fact, possession. But under Casterline, this Court has made clear ownership is not the same as possession. And that's why it was error not to give that instruction. It says the instruction says the person knows of its presence and has physical control of it or has the power and intention to control it. Correct. So where does ownership alone find its way into that? Well, because jurors could confuse the power and intention to control with ownership. Generally, one who owns something has the power and intention to control it. But the word ownership doesn't even appear in that paragraph. It does not appear in the – exactly. It does not appear in the paragraph of the instruction that the Court gave. It does appear in the proposed instruction that we had requested, which was ownership alone without physical access to or dominion and control over a firearm does not constitute possession. How would the jury think that one could own it without having access to it when the instruction says that the person has to know of its presence and has physical control of it? Again, Your Honor, because just common sense that one who owns something generally is considered to have the power to exercise control over it. So when the – Was there any argument made to the jury on those lines by the prosecution? The prosecution repeatedly argued that he owned the gun, he owned the gun, he owned the gun, therefore he possessed it. And so that's what the jury was left with. Do you want to read that to us where the prosecution said he owned the gun, he owned the gun, he owned the gun? I was paraphrasing, Your Honor, if I might just have a moment. Because we do cite to this in our brief on page –  We argued – well, we argued as we had to argue under the instructions that were given, which was he, in fact, did not have physical access to the gun and that he did not have the power or the intention to control the gun, which is what the instructions were. But you argued to the jury that his ownership alone was not enough? Yes. You made that argument. Yes, Your Honor. And there's no objection to it. Of course not. The court allowed us to make the – the court was – had suggested he was – it was not the witness who allowed us to make that argument, but ultimately he did allow us to make the argument. But the jury still was not given the instruction. How did he suggest that you weren't – you weren't going to be allowed to make that argument? Well, Judge Less did not believe that the instruction, which is quoted from the Castroline decision, is a correct statement of the law. He believes that – he also believed that you didn't have to have the power and intention to control a gun to get – to be convicted of possession. So Judge Less seemed to be confused on what the law, in fact, was, but he – because the government said it was not going to object to defense counsel making the argument, he was willing to allow the argument to be made. But he did not believe that it was a correct statement of the law, which, of course, it is. Well. But you weren't hobbled in making your argument. Beg your pardon? You weren't hobbled in making your argument. No, but the jury was not properly instructed, and, you know, with – Well, two different questions on whether the jury was properly instructed. One would be whether failure to give an instruction that was – that was perhaps correct is – is failure to instruct the jury correctly. The other is, is there an error in what the – in what the – in what the district court told the jury? There's certainly no error in what the district court said. Okay. So the instructions that the jury – that the jury received were not erroneous. That's correct. That's correct. The question is, then, whether the failure to give a different instruction that might also be correct is – is error. That's right. And which went to the theory of the defense. And what this Court has made clear is that failure to give a theory of the defense instruction, which is supported by the law and supported by the evidence. So you've got your defense on. So the question is, coming back to the point, you said the prosecution argued ownership was enough, and you were going to give us some sides to it. Yes, Your Honor. We are on page 20 of our brief. Page 21 of the brief. In other words, ladies and gentlemen, the defendant said, that was my firearm. I bought it, and I knew at the time that it had a scratch-out serial number. And, again, what the defendant said, no denial, no surprise. Again, it was like that when I bought it. And I think about it, ladies and gentlemen, a lot of people leave stuff at their parents' house. That doesn't mean it's suddenly not yours anymore. A lot of people have possessions at their relatives' or parents' locations all the way across the country. And you may not visit very often, but it's still your stuff. And you still have the power and intention to control it if you wanted to get it. You could. It's yours. And then the phrase, power and intention to control, is the language, is similar to the language in the instruction that the district court gave, which would be a correct statement of the law, wouldn't it? Correct. But then it goes on to say, it's yours, and you know about it. So the mere fact that it's yours, that you owned it. That's a relevant fact, isn't it? I beg your pardon? That's a relevant fact. Absolutely, Your Honor. But the defense had the right to have the jury instructed as to its theory, which was that ownership alone is not enough. And the jury could have been left with the impression, based on the argument, that ownership alone was the same as possession. And that's simply not the case. And then with respect to proposed instruction number two. But you did argue that point. We did, Your Honor. Now, with respect to proposed instruction number two, that dealt with the on or about instruction, what is reasonably near the time. And. Casterline was in prison, wasn't he? Casterline was in prison at the time. That's correct. But what the court said in Casterline was that a variance of seven months from the time possession is alleged in the indictment is, in fact, a fatal variance. Here we have seven and a half months difference. And the instruction was necessary to let the jury know that it could not convict him of possessing a firearm in – for when he possessed it in July or prior to July of 1999. July being, of course, the date on which he purchased it. Well, it's the date on – it's the last date on which he was in his parents' home. In his parents' home. Okay. And – but he was not charged with possession of it until – in the indictment until February of 2000. So, in fact – This would have been effectively a judgment as a matter of law, wouldn't it? That's correct. I mean, this effectively would have been an instruction to the jury to find for the defendant. Well, no. That simply would have made – no. It would have cleared up any confusion that they had that they could not convict him of possession based on a finding that he possessed the gun in July of 1999. That – now, they could have found that he did possess it in February of 2000. But if, in fact, they were basing a conviction on a finding that he had possessed it in July of 1999 when he lived at the house and not in February of 2000, that, in fact, would be a fatal variance. And this instruction would have made clear to the jury that 7-1⁄2 months difference would not be enough. And, again, supported by the evidence – and the instruction that the Court gave simply said that although it is necessary for the government to prove the offense was committed on a date reasonably near the date charged in the indictment, it is not necessary for the government to prove the offenses were committed precisely on the date. So all the instruction that was given to all the jury was what the government did not have to prove. It did not make clear that a variance of 7-1⁄2 months, in fact, was not proper. And if I may, I'd like – unless the Court has any further questions or announcements. All right. Thank you. May it please the Court, Fred Rowley, Jr. for the government. I'd just like to address the mere ownership theory of the defense quickly. The defense is maintaining that the government argued or equated ownership, mere ownership, with possession. But if the Court looks at the closing argument advanced by government counsel, that's not what the government argued. The issue of possession, in contrast to the knowledge, the defendant's knowledge that the gun had an obliterated serial number, and those are two separate elements. The issue of possession, of knowing possession, was joined by both sides in terms of the defendant's ongoing access to the gun, which centered on the key, the defendant's relationship to the key. And the government argued two things. First, the government asked the jury to credit the agent's testimony. And the agents testified that the defendant actually had the key, gave it to Agent Guioni, who in turn had it transported to Agent Whitmore. Alternatively, the government argued that the jury ought to find knowing possession, because even if the jury accepted the parent's testimony and accepted the defendant's version of the events, the defendant still knew where the key was. The mother testified that she called the defendant, and the defendant told her that the key was inside the drawer, so that even on the defendant's version of what happened on the day of the search, the jury could reasonably infer continued access to the gun and the power and intention to control. Now, the government – So it's the defense counsel's open with the key is the key. That's exactly right. I believe the quote was, the key is the key to who has the ability to exercise dominion and control over the contents of the drawer. I believe that's what the defense counsel argued. And indeed, the defense itself in closing acknowledged that the government's evidence on possession turned on the key. I believe if the court reviews the closing argument the defense stated to the jury, they attempted to show you possession with the key. And in fact, the defense counsel argued that the government recognized that mere ownership was not enough, and that's precisely why the government agents fabricated this story, allegedly fabricated this story, about the defendant providing the key to the agents in order to establish that he possessed the key and therefore had the power and intention to control the gun on a date reasonably near. In fact, the date charged in the indictment. So the issue that as presented to the jury on the question of possession really was framed in terms of ongoing access, the ability to exercise the key, and it was – I'm sorry, to exercise control over what was in the drawer. And so it was left to the jury to decide whether that amounted to possession in conjunction with the other evidence. Now, the government did impliedly note or rely upon the defendant's ownership of the gun as well, because the government noted that the defendant left his things at his parents' house, that they were his things, and that therefore the jury ought to find ongoing possession. But the government was careful to point out in the same passage, and this is the passage that's cited in the defense brief, if you wanted to get it, you could. So the point is, again, ongoing access beyond the date that the defendant moved out of the Barclay residence, which was in July of 1999. It's not just ownership of the gun. It's continued access to the firearm when it was at his defendant's house. That was the government's theory. Now, moving on to the honor about instruction. Yes, Your Honor. Now, with respect to the honor about instruction, the defense, again, was able to get its theory out based upon the instruction that was given by the district court. The defense explicitly argued that July 9th, 1999, was not reasonably near the date charged in the indictment, February 28th, 2000. The defense argued ---- How does the government explain that gap? Your Honor, the government's theory was that there was no gap. That even after the defendant moved out, the defendant either had the key or knew what the key was, and that on either version presented to the version of the facts presented to the jury, the defendant had the power and intention to control the firearm after he moved out of the house. So on the government's theory, there was no gap. But the defense was able to get its theory across. The defense argued, and I believe it's something to the effect of, there is no common sense interpretation that would allow you to find July 9th, 1999, being reasonably near February 28th, 2000. Later on, the defense counsel read or recited the standard that the jury ---- I'm sorry, that the district court gave the jury, which is reasonably near. The defense counsel argued reasonably near is the law. And you can't find July 9th, 1999, to be reasonably near February 28th, 2000. So these points were presented to the jury and presented to the jury quite forcefully. You know, this discrepancy bothers me. Is this a model pleading? Is this the way your office does it? I'm sorry, Your Honor. I'm sorry. Is, Judge Briggs, are you referring to the indictment or to the jury instruction? To the indictment. I believe, Your Honor, the reason why the indictment, just reading the indictment and knowing the facts of the case, February 28th, 2000 was the day of the search. So they executed search warrants on that date, and they found a variety of guns, and one of them was this gun, which had an obliterated serial number. But the government position, this is important, and the jury was certainly entitled to find it. There's no sufficiency challenge here. The jury was certainly entitled to find that this defendant ---- Your argument was that the possession requirement was satisfied on the date of the search. Absolutely, Your Honor. And, in fact, there was testimony even given by the parents that supported that. The defendant lived right around, I believe, a few blocks down from where his parents lived at the Cypress Street residence. The defendant had visited the house a couple of times, and the reason why he hadn't visited more was just because he worked. The testimony from the mother was that he kept long hours. The mother testified that she loved the defendant. She brought him dinner. The defendant held title to the Cypress Street residence with his parents. And that is all to suggest that there's nothing in the record to support the suggestion that the parents would have denied this defendant access to the house, access to the drawer. And, in fact, the defendant knew where the key to the drawer was, even if you credited the parents' testimony. Now, it is important just to loop back. The defense was able to get its theory across, though. And the defense did argue that July 9th was simply too remote from the date charged in the indictment. But the jury was entitled to disagree, and that's precisely what it did. Well, but wait a minute. Isn't that their argument, that the jury could have found, improperly found, that July was reasonably near, and Casterline, at least in the throwaway statement, suggests that that's just wrong as a matter of law? Your Honor, this case, regardless of which version of the facts the jury accepted, is distinguishable from Casterline, because even on the defense theory, there is evidence from which a reasonable jury could infer ongoing possession. That's not my question. Yes, Your Honor. What you seem to say was they could have found that he had possession, in the sense of possession as defined, in July. Not the ongoing possession, but they had it up until the day he moved out. Okay, but once he moved out, he lost possession. And so they could have, as I understood you to say, on the facts of this case, not even considering ongoing possession, could have come to the conclusion that he had possession up to the date, seven months out, and that would have been reasonably near. That's not what I'm saying at all, Your Honor. I'm not taking that position at all. I was just trying to say that on the evidence presented to the jury, regardless of which version was accepted, the jury could have followed the instructions and found that the defendant had the power and intention to control the firearm on a date reasonably near the date charged in the indictment. You're lying. That's exactly because of the ongoing possession, Your Honor. The ongoing possession was key, and that's why both parties, the defense and the government, focused on the key, because both parties understood that that was really the focus of the possession issue in this case, was the defendant's ongoing access to that firearm at his parents' house. It's clear that the jury would have been a lot more precisely guided if the instruction proposed, or something like it, to say that seven months as a matter of law is not reasonably near. If the case were just like Kasterlein, because as the Court pointed out, in Kasterlein the defendant couldn't possibly have accessed the guns because he was in jail and the guns were in the sheriff's lockup. So if the case were like that, and you could really say that as a matter of law, there was a cutoff point beyond which there was no evidence. Even if he had ongoing control, if that ended seven months out. As in Kasterlein. If you had what you might call a Kasterlein situation. No, not a Kasterlein. You could have had this case, but he gave up the key after he moved out within a couple of weeks. Therefore, still, it falls within the seven months bright line that Kasterlein arguably establishes. If what the Court's getting at is that. As he gave up the incidence of possession. If there was a strong indication. Aside from moving out. Yes, Your Honor. If there was a strong indication of abandonment. But the government's position was, and this is what it argued to the jury, that whether the jury credited the parent's testimony or credited the agent's testimony, there was still indicia of possession of power and intention to control after that cutoff date. And that's why Kasterlein doesn't apply here. And I think that's what the district court was getting at. That this case is different from Kasterlein. If there are no further questions. Thank you, Your Honors. This is not a legal sufficiency case. This is a case of whether or not jury instruction should have been given. And the government spent some time talking about the theories that it was arguing. In determining whether or not the jury instruction had to be given, the Court has to look at the evidence in the light most favorable to the defense. And in the light most favorable to the defense, the defendant did not have access to this gun for more than seven and a half months after he moved out of the house. The instructions would have made clear to the jury they could not have convicted him based on possession prior to July. The jury was left with confusion. And the instructions should have been given and a new trial should be ordered. Thank you. Thank you. The matter is submitted. We'll come to number three on the calendar. U.S. versus Jose Juan Sandoval.
judges: Pregerson, Fisher, Bybee